United States District Court
Southern District of Texas
**ENTERED**
January 15, 2020
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MAMADOU BAILO DIALLO, | § | |
| PETITIONER | § | |
| | § | |
| v. | § | Civil Action No. 1:19-cv-216 |
| | § | |
| MICHAEL J. PITTS, ET AL., | § | |
| RESPONDENTS | § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court is in receipt of Petitioner Mamadou Bailo Diallo's "28 U.S.C. § 2241 Petition for Writ of Habeas Corpus" (hereinafter, Diallo's "Petition") and "Opposed Motion to Set Hearing" (hereinafter, Diallo's "Motion for Hearing"). Dkt. Nos. 1 and 12. Respondents have filed a "Motion to Dismiss" Diallo's Petition, which argues that this Court lacks subject matter jurisdiction over Diallo's claims. Dkt. No. 8. It is recommended that the Court: (1) **DENY** Respondents' Motion to Dismiss; (2) **GRANT** Diallo's Petition as further specified below; and (3) **GRANT** Diallo's Motion for Hearing.

## I. Procedural History

On November 27, 2019, Diallo filed his instant Petition. Dkt. No. 1. That same day, Diallo filed a "Memorandum in Support" of his Petition and an "Opposed Motion for an Order to Show Cause Requiring Respondents to Timely Respond" (hereinafter,

Diallo's "Opposed Motion").  Dkt. Nos. 2-3.  Diallo's Opposed Motion relied upon 28

U.S.C. § 2243.  Dkt. No. 3 at 1, 3-5.  In relevant, part § 2243 provides:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.
>
> The writ, or order to show cause shall be directed to the person having custody of the person detained.  It shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed.

28 U.S.C. § 2243.

The Court granted Diallo's Opposed Motion, and Respondents subsequently

filed an "Opposed Motion for Extension of Time to Reply to Petitioner's Petition." *See*

Dkt. Nos. 4-7.   The Court granted Respondents' Opposed Motion, allowing

Respondents until December 25, 2019, to file a response to Diallo's Petition.  Dkt. No.

7.  Rather than respond to Diallo's Petition on the merits, Respondents filed their

instant Motion to Dismiss, arguing that, under Federal Rule of Civil Procedure

12(b)(1), this Court lacks subject matter jurisdiction.  Dkt. No. 8.

On January 2, 2020, Diallo filed his "Response in Opposition to Respondents'

Motion to Dismiss" (hereinafter, Diallo's "Response").  Dkt. No. 11.  Subsequently,

Diallo filed his opposed Motion for Hearing.  Dkt. No. 12.  In his Response and his

Motion for Hearing, Diallo argues that Respondents have deliberately

mischaracterized his Petition in order to argue that subject matter jurisdiction is

lacking.  Dkt. No. 11 at 1-5; Dkt. No. 12 at 2.  Diallo asserts that subject matter

jurisdiction is present, and that this Court may order his release because the material

facts of this case are not in dispute and his Petition only presents issues of law.  Dkt. No. 12 at 2.  Alternatively, Diallo asks the Court to conduct a custody hearing to determine whether his continued detention is justified.  *Id.*

## II.  The Parties' Allegations

The parties agree that Diallo is a native and citizen of Guinea.  Dkt. No. 1 at 3; Dkt. No. 8 at 8.  On or about August 4, 2017, Diallo presented himself at the Hidalgo, Texas Port of Entry and requested asylum.  *Id.*  Diallo claims that asylum is appropriate because he was imprisoned, starved, and tortured in Guinea due to his Peul ethnicity and his leadership activities for the Union of Democratic Forces of Guinea ("UFDG"), a political party that opposes the current ruling party of Guinea. Dkt. No. 1 at 4-5.  He is currently being detained at the Port Isabel Detention Center in Los Fresnos, Texas.  *Id.* at 3.  Diallo alleges that he has been detained since August 4, 2017, and "has never received an individualized hearing before a neutral arbiter to determine whether his detention is even necessary." *Id.* at 6.

Diallo asserts that his detention without a hearing, which has now exceeded a period exceeding two years and five months, violates his right to due process as guaranteed by the Fifth Amendment to the United States Constitution.  Dkt. No. 1 at 10.  Diallo seeks his immediate release, or an immediate custody hearing and release.  *Id.* at 11.  He states that no other recourse is available to him because "[c]urrent regulations strip the immigration court of jurisdiction over custody redeterminations for 'arriving aliens.'" *Id.* at 10.  Diallo asks that his release be

accompanied by "appropriate conditions of supervision if necessary." *Id.* at 11. Along with all unspecified relief that might be just and proper, he asks for his reasonable attorneys' fees, costs, and any other disbursements due to him pursuant to the Equal Justice Act, 28 U.S.C. § 2412. *Id.*

Respondents argue that the Court should dismiss Diallo's Petition under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Dkt. No. 8 at 1. Respondents claim that Diallo is challenging the decision of the United States Immigration and Customs Enforcement ("ICE") to deny his request for parole. Respondents state that this is "evident" because Diallo is seeking immediate release. *Id.* at 17. Respondents contend that this Court does not have jurisdiction to review ICE's discretionary decision to deny parole; therefore, dismissal is proper. *Id.* at 7, 13-20. Additionally, Respondents claim that Diallo's case is now moot because he has since received the parole interview he was seeking. *Id.* at 21 (noting that Diallo received a parole interview on December 23, 2019, subsequent to the filing of his Petition).

### III. Factual Background

After presenting himself for inspection on August 4, 2017, at the Hidalgo, Texas Port of Entry, Diallo claimed a fear of returning to Guinea. Dkt. No. 1 at 8; Dkt. No. 8 at 8. On August 15, 2017, an asylum officer interviewed Diallo and found that he had a credible fear of persecution upon return to Guinea. *Id.* On August 17, 2017, the Department of Homeland Security ("DHS") served Diallo with a Notice to Appear ("NTA") before an immigration judge. Dkt. No. 8-1 at 2. The NTA charged

him with inadmissibility under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (hereinafter, "INA" or the "Act") as an immigrant who, "at the time of application for admission, [was] not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under Section 211(a) of the Act." *Id.*

In a letter dated September 6, 2017, DHS informed Diallo that ICE had decided not to release him on parole.  Dkt. No. 8-1 at 5-6.  DHS's letter stated that Diallo would not be released because: (1) he had not established his identity to ICE's satisfaction; (2) he had not established that he would appear for immigration proceedings if released; (3) he had not established that he would pose no danger to the community or U.S. security if released; and (4) additional, exceptional overriding factors of an unspecified nature militated against his release.  *Id.*  Pursuant to his NTA, Diallo appeared in immigration court, admitted the NTA's factual allegations, and conceded removability.  *Id.* at 8.

The immigration judge, Robert L. Powell, found Diallo removable. Dkt. No. 8-1 at 8-9.  Diallo subsequently filed applications for asylum, withholding of removal under § 241(b)(3) of the INA, and protection under the Convention Against Torture. *Id.*   Judge Powell held a hearing on the merits of Diallo's applications on November 2, 2017. *Id.* at 9.  Diallo appeared pro se. *Id.* at 8.  On November 7, 2017,

Judge Powell denied Diallo's applications and issued a written decision ordering Diallo removed to Guinea. *Id.* at 23.

Diallo appealed the decision to the Board of Immigration Appeals ("BIA"). Dkt. No. 8-1 at 26. On April 11, 2018, the BIA reversed and remanded the case back to Judge Powell for proceedings consistent with its order. *Id.* at 26-29. Noting that the BIA did not explicitly require him to conduct additional hearings (*id.* at 33), Judge Powell issued a written decision on May 23, 2018. *Id.* at 32-59. In his decision, Judge Powell again denied Diallo's applications and ordered him removed to Guinea. *Id.* at 59. Diallo appealed. *Id.* at 63.

On November 20, 2018, the BIA reversed and remanded the case again for proceedings consistent with its order. Dkt. No. 8-1 at 63-64. In reversing, the BIA noted that it had previously found that Judge Powell's adverse credibility and firm resettlement findings were clearly erroneous, and that Diallo was "was eligible for asylum as a matter of discretion[.]" *Id.* at 63. The BIA then noted that Diallo had not subsequently been provided with appropriate notice of his rights to seek additional proceedings or supplement the record before Judge Powell issued his second decision. *Id.* at 63-64. Additionally, the BIA stated as follows:

> Finally, we note the Immigration Judge's stated disagreement with the Board's decision, as set forth in our April 11, 2018, decision; relating to firm resettlement (IJ at 14, fn 13). We also note his references to the numbers of migrants coming to the United States through other countries, including in "caravans." On remand, the Immigration Judge is required to issue a decision that is not inconsistent with our prior decision in this case relating to firm resettlement, as well as our decision on the issue of discretion, and should also refrain from general comments not related to the particular case in front of him.

*Id.* at 64.

On remand, a new immigration judge, Frank T. Pimentel, issued a decision on February 1, 2019, ordering Diallo removed to Guinea. Dkt. No. 8-1 at 66. Diallo appealed, but this time the BIA affirmed and dismissed his appeal. *Id.* at 71-73. On August 21, 2019, Diallo filed a petition for review with the Fifth Circuit Court of Appeals. *See U.S. Court of Appeals, Fifth Circuit, Docket Number 19-60619, General Docket.* On October 15, 2019, Diallo filed a motion for a stay of removal. *Id.* On October 17, 2019, DHS conducted a Post Order Custody Review ("POCR"). *Id.* at 75-84. The reviewing officer recommended that Diallo should not be released as he was under a final order of removal, travel documents could be issued in the foreseeable future without difficulty, and his removal would then likely occur expeditiously. *Id.* at 84.

On November 14, 2019, the Fifth Circuit granted Diallo's motion for a stay of removal and granted the parties' request to remand the case back to the BIA for additional proceedings. *See U.S. Court of Appeals, Fifth Circuit, Docket Number 19-60619, General Docket.* ICE then interviewed Diallo but decided not to parole him. Dkt. No. 8-1 at 87-88. In a December 23, 2019 letter announcing this decision, ICE indicated that it was only refusing parole because Diallo's case "was a final order," travel documents had been issued, there was "a TRO," and the case had been remanded back to the BIA. *Id.* at 88. This same letter indicates that ICE had not found Diallo to be a flight risk, a danger to the community, or someone who had failed to establish his identity. *Id.* at 87-88.

## IV.  Legal Standards

"Federal courts are courts of limited jurisdiction[.]" *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)).  The party asserting jurisdiction "constantly bears the burden of proof" to show that jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

> When a party files a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.*  The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true.  If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* (citation omitted) (citing *Paterson [v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)]). If, however, the defendant supports the motion with affidavits, testimony, or other evidentiary materials, then the attack is "factual" and the burden shifts to the plaintiff to prove subject matter jurisdiction by a preponderance of the evidence. *Id.*

*MacKenzie v. Castro*, No. 3:15-CV-0752-D, 2016 WL 3906084, at *2 (N.D. Tex. July 19, 2016) (citations omitted).

Article III of the U.S. Constitution restricts the power of federal courts, limiting them to presiding over cases and controversies. *Chafin v. Chafin*, 568 U.S. 165, 171 (2013).  As a result, federal courts lack the power to decide questions that cannot affect the rights of the litigants before them. *Id.*  Federal courts similarly lack the power to provide legal opinions regarding hypothetical facts. *Id.*  For jurisdiction over a lawsuit to lie in federal court, a live dispute must exist when the suit is filed, and the parties must continue to have a personal stake in the suit's outcome. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990).  If no case or controversy exists

when a suit is filed, or if the parties' cease to have a stake in the suit's outcome, a federal court must dismiss the suit on the grounds of mootness. *Chafin v. Chafin*, 568 U.S. 165, 172.

Section 2241 of Title 28 confers federal subject-matter jurisdiction over habeas petitions filed by aliens who allege that their detention violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). In enacting the REAL ID Act of 2005, however, Congress divested federal courts of jurisdiction over certain categories of immigration cases. *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005). For example, federal district courts generally may not review a petitioner's challenge to a final order of removal. 8 U.S.C. § 1252(a)(5); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007). Similarly, federal courts generally may not review an action committed to the discretion of the Attorney General or DHS. 8 U.S.C. § 1252(a)(2)(B)(ii). Due to this prohibition, federal courts may not review decisions "regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole[.]" 8 U.S.C. § 1226(e).

Nevertheless, although § 1252(a)(2)(B)(ii) bars judicial review of individual parole decisions, petitioners may still challenge the statutory framework that permits an alien's detention without bail. *Jennings v. Rodriguez*, , —— U.S. ——, 138 S.Ct. 830, 841, 200 L.Ed.2d 122 (2018) (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)). Federal courts maintain jurisdiction to review an alien's detention, to the extent that the alien's detention "presents constitutional issues." *Oyelude v. Chertoff*, 125 F.

App'x 543, 546 (5th Cir. 2005) (unpublished); *see also Garza-Garcia v. Moore*, 539 F.

Supp. 2d 899, 903 (S.D. Tex. 2007) (court may review "questions of law regarding the

AG's statutory authority or the regulatory framework" governing immigration

detention); *Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven

after the passage of the REAL ID Act, district courts retain the power to hear

statutory and constitutional challenges to civil immigration detention under § 2241

when those claims do not challenge a final order of removal, but instead challenge

the detention itself.").

## V. Discussion

As noted above, Respondents assert that Diallo is challenging ICE's

discretionary decision to deny him parole. *See* Dkt. No. 8 at 7, 13, 21. Diallo rejects

this contention, stating that Respondents have deliberately mischaracterized his

Petition in order to avoid addressing his Fifth Amendment claim, which is his sole

claim for relief. Dkt. No. 11 at 1, 2-5. Diallo explicitly asserts that he is not

challenging ICE's decisions to deny him parole. *Id.* at 2-3 ("Mr. Diallo is not

challenging Respondents' discretionary decision to deny him parole."). Rather, he is

challenging "the extent of Respondents' authority under the Fifth Amendment to

continue his detention without providing an adversarial hearing before a neutral

decision-maker to determine whether his detention is justified." *Id.* at 3. Because

Diallo is not challenging ICE's denial of parole, or failure to provide him with a parole

interview, Diallo contends that Respondents' "rush to perform a parole re-

determination the morning of the day" they filed their Motion to Dismiss does not moot Diallo's claim. *Id.* at 7.

In support of his allegations, Diallo cites the Memorandum and Order filed by United States District Judge Diana Saldaña in *L.N. v. Nielsen et al.*, 5:18-MC-00932 (S.D. Tex. Mar. 29, 2019), which he attaches to his Response. Dkt. No. 11 at 4 (citing Dkt. No. 11-1). In *L.N. v. Nielsen et al.*, an asylum-seeker ("L.N.") filed a 28 U.S.C. § 2241 petition arguing that her prolonged detention without an individualized bond hearing violated her Fifth Amendment rights. Dkt. No. 11-1 at 5-6, 8. At the time Judge Saldaña issued her Memorandum and Order, L.N. had been detained over a year. *Id.* Rather than address L.N.'s claim, the respondents argued that L.N. was challenging DHS's discretionary decision not to grant her parole. *Id.* at 6, 8. Respondents then argued that the court lacked subject matter jurisdiction over L.N.'s petition pursuant to 8 U.S.C. § 1226(e) and § 1252(a)(2)(B)(ii). *Id.*

Judge Saldaña rejected the respondents' argument and mischaracterization of L.N.'s claims. Dkt. No. 11-1 at 8. Judge Saldaña pointed out that L.N. was not seeking a redetermination of her parole request but was instead challenging the constitutionality of "the civil-detention laws themselves and the extent of DHS's discretion under them." *Id.* Noting that the respondents' reliance upon 8 U.S.C. § 1226(e) and § 1252(a)(2)(B)(ii) was misplaced, Judge Saldaña found that L.N.'s claims were the type of claims the REAL ID Act preserved for judicial review. *Id.* (citing *Demore v. Kim*, 538 U.S. 510, 517; *Alexis v. Sessions*, Civil Action No. H-18-1923, 2018 WL 5921017, at *4 (S.D. Tex. Nov. 13, 2018)). Relying upon the Supreme

Court's recent opinion in *Jennings v. Rodriguez*, —— U.S. ——, 138 S.Ct. 830 (2018),

Judge Saldaña opined as follows:

> [T]he Supreme Court recently held in a closely analogous case that federal
> courts retain jurisdiction over as-applied Due Process Clause challenges
> like Petitioner's. *Rodriguez*, 138 S. Ct. at 841. In *Rodriguez*, a class of
> asylum-seekers raised precisely the same argument Petitioner raises here:
> that the relevant civil-detention statute "do[es] not authorize prolonged
> detention in the absence of an individualized bond hearing." *Id.* at 839
> (internal quotation marks omitted). Just like this Petitioner, the
> *Rodriguez* petitioners sought individualized bond determinations on the
> basis that any reading of the detention statute that does not include "a
> bond-hearing requirement . . . would violate the Due Process Clause of the
> Fifth Amendment." 138 S. Ct. at 839. Because this claim constitutes a
> "challenge[] to the statutory framework" and "the extent of the
> Government's detention authority"—not merely a grievance regarding an
> individual parole denial—the Court held that it is not barred by the
> statutory prohibition against judicial review of discretionary agency
> decisions. *Id.* at 841.
>
> *Rodriguez* plainly forecloses Respondents' jurisdictional objections. In fact,
> *Rodriguez's* jurisdictional holding was so clear that, in its wake, it appears
> Government respondents in analogous cases have abandoned
> jurisdictional arguments altogether. *See, e.g., Perez v. Decker*, 2018 WL
> 3991497, at *3 (S.D.N.Y. Aug. 20, 2018); *Otis V. v. Green*, 2018 WL
> 3302997, at *2 (D.N.J. July 5, 2018). Thus, given the Supreme Court's
> authorization of as-applied due process challenges to immigration
> detention, the Court has subject-matter jurisdiction over this case and may
> consider the merits of Petitioner's claims.

*Id.* at 8-9 (footnotes and record citations omitted).

Judge Saldaña's above-quoted analysis is applicable to Diallo's Fifth

Amendment claim. Like the respondents in *L.N. v. Nielsen et al,* Respondents in this

case are relying upon 8 U.S.C. § 1226(e) and § 1252(a)(2)(B)(ii) to argue that this

Court lacks jurisdiction over Diallo's Petition. *Compare* Dkt. No. 11-1 at 8, *with* Dkt.

No. 8 at 16. In relevant part, § 1226(e) of Title 8 provides that no court may "set aside

any action or decision by the Attorney General under this section regarding the

detention or release of any alien or the grant, revocation, or denial of bond or parole."

8 U.S.C. § 1226(e).  Similarly, § 1252(a)(2)(B)(ii) provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . . (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii).  Sections 1226(e) and 1252(a)(2)(B)(ii) both prohibit

judicial review over discretionary decisions, not constitutional challenges to the

statutory framework or extent of the Government's detention authority.  Dkt. No. 11-

1 at 8-9 (citing *Jennings v. Rodriguez*, 138 S.Ct. 830, 841).

Like L.N., Diallo is not challenging a discretionary parole determination or

refusal to provide parole.  Accordingly, *Jennings v. Rodriguez* "plainly forecloses

Respondents' jurisdictional objections." Dkt. No. 11-1 at 9.  Diallo's Fifth Amendment

challenge to his continued detention without a hearing falls within this Court's

subject matter jurisdiction. *See id; Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (federal

courts have jurisdiction over constitutional challenges "to the statutory framework"

and "the extent of the Government's detention authority" which allow detention

without bail). *See also Nielsen v. Preap*, —— U.S. ——, 139 S. Ct. 954, 962, 203

L.Ed.2d 333 (2019) (noting that § 1226(e) "applies only to 'discretionary' decisions . .

. . It does not block lawsuits over 'the extent of the Government's detention authority

under the 'statutory framework' as a whole.'") (citing *Jennings v. Rodriguez*, 138 S.Ct. 830, 841 (quoting *Demore*, 538 U.S. at 517, 123 S.Ct. 1708)).  Respondents' Motion to Dismiss should be **DENIED**.

As this Court possesses jurisdiction to review Diallo's claim on the merits, it is also recommended the Court **GRANT** Diallo's Petition and Motion for Hearing, to the extent that he seeks an immediate hearing to determine: (1) whether his continued detention without a hearing violates his due process rights under the Fifth Amendment to the United States Constitution; and (2) whether he should be released with appropriate conditions of supervision.  *See* Dkt. No. 1 at 11; Dkt. No. 12 at 2-3. Diallo alleges the following facts in support of his request for relief:

1. He has been imprisoned for more than 2 years and five months without ever having received an individualized, adversarial hearing before a neutral arbiter to determine whether his continued detention is justified.  Dkt. No. 1 at 6; Dkt. No. 11 at 3.

2. His identity has been conclusively established.  Dkt. No. 1 at 9.  "Other than two arrests in Guinea which were motivated by Mr. Diallo's political affiliation and ethnicity and which, in part, form the basis for his asylum claims, Mr. Diallo has no criminal record."  *Id.*

3. An asylum officer has determined that he has a credible fear of returning to Guinea "because of past persecution and the likelihood of future persecution if he is returned."  *Id.* at 8.  Given the likelihood of success on his asylum claims, his vigorous

pursuit of his claims for relief thus far, and his promise to appear for all future proceedings, including removal proceedings, he is not a flight risk. *Id.*

4. La Posada Providencia, a transitional shelter in San Benito, Texas, has offered him supportive services if he is released, including shelter, food, clothing, transportation, and English literary services. Dkt. No. 1 at 7-8. Additionally, he has a letter of support from a friend and proposed sponsor. *Id.* at 7.

5. The December 23, 2019 letter announcing ICE's decision not to parole Diallo indicates that it is only refusing parole because Diallo's case "was a final order," travel documents had been issued, there was "a TRO," and the case had been remanded back to the BIA. *Id.* at 88. This same letter indicates that ICE had not found Diallo to be a flight risk, a danger to the community, or someone who had failed to establish his identity. *Id.* at 87-88.

Despite the length of Diallo's detention, and despite Respondents' extended opportunity to respond to Diallo's Petition (*see* Dkt. Nos. 4-7), Respondents have not responded to Diallo's claim on the merits. Instead, they have chosen to file a Rule 12(b)(1) Motion to Dismiss which is groundless and relies upon a questionable mischaracterization of Diallo's Petition. It is, therefore, recommended that the Court set a hearing as soon as reasonably possible to determine: (1) whether Diallo's continued detention without a hearing violates his due process rights under the Fifth Amendment to the United States Constitution; and if so, (2) whether Diallo should be released with appropriate conditions of supervision.

## VI.  Recommendation

It is recommended that the Court: (1) **DENY** Respondents' Motion to Dismiss (Dkt. No. 8); (2) **GRANT** Diallo's Petition, in part; and (3) **GRANT** Diallo's Motion for Hearing (Dkt. No. 12).  Specifically, it is recommended that the Court set a hearing as soon as reasonably possible to determine: (1) whether Diallo's continued detention without a hearing violates his due process rights under the Fifth Amendment to the United States Constitution; and if so, (2) whether Diallo should be released with appropriate conditions of supervision.

## VII.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

SIGNED on this 15th day of January, 2020.

Ignacio Torteya, III
**United States Magistrate Judge**

16/16