UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MAMADOU BAILO DIALLO, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 1:19-cv-00216 |
| | § | |
| MICHAEL J. PITTS, *et al.*, | § | |
| Respondents. | § | |

## ORDER

Before the Court is Mamadou Bailo Diallo's ("Petitioner") "28 U.S.C. § 2241 Petition for Writ of Habeas Corpus" ("Writ of Habeas Corpus") (Docket No. 1). Michael J. Pitts, *et al.*, ("Respondents") filed "Respondents' Reply to Petitioner's Constitutional Claim" ("Reply") (Docket No. 32). The Court also received "Petitioner's Application for a Temporary Restraining Order" ("Application for TRO") (Docket No. 37). For the reasons stated below, Petitioner's Writ of Habeas Corpus (Docket No. 1) is **GRANTED** as to the request for a bond hearing. The Court **ABATES** ruling on the Application for TRO (Docket No. 37) and **ORDERS** the parties to file a status update within 30 days of this Order.

### I.   BACKGROUND[1]

Petitioner is a citizen of Guinea who lacks authorization to enter the United States. Petitioner presented himself at the Hidalgo, Texas Port of Entry and sought political asylum, August 4, 2017. An asylum officer interviewed Petitioner and found he had a credible fear of persecution upon return to Guinea. The Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear ("NTA") before an immigration judge ("IJ").

The IJ found Petitioner removable. Petitioner appealed to the Board of Immigration Appeals ("BIA") and Respondents sought summary affirmance of the IJ's decision.[2] Docket No. 2 at 13. The BIA reversed the IJ's decision and remanded the case. The IJ again denied Petitioner's application, ordered him removed, and Petitioner appealed. Respondents again sought summary affirmance, but the BIA found Petitioner "was eligible for asylum as a matter of

---

[1] Unless otherwise noted, all facts were obtained from the "Magistrate Judge's Report and Recommendation" (Docket No. 13).
[2] A motion for summary affirmance requests the BIA to affirm an IJ's decision without a written opinion. *See* 8 C.F.R. § 1003.1(4)(i).

1

discretion," and again remanded the case. Docket No. 8-1 at 63.

On remand, a new IJ ordered Petitioner removed to Guinea. Petitioner appealed to the BIA and Respondents sought summary affirmance for a third time. Docket No. 2 at 13. The BIA affirmed the IJ's decision and dismissed Petitioner's appeal. Petitioner appealed to the Fifth Circuit Court of Appeals ("Fifth Circuit"), where he moved for a stay of removal. *See generally Diallo v. Barr, Docket No. 19-60619 (5th Court of Appeals 2019).* The Fifth Circuit granted Petitioner's motion for stay of removal and granted the parties' joint request to remand the case to the BIA for new proceedings. *Id*.

By correspondence, U.S. Immigration and Customs Enforcement ("ICE") indicated Petitioner was refused parole because he was under a final order of removal, travel documents should be issued in the foreseeable future without difficulty, and his removal would likely occur expeditiously. *See* Docket 8-1 at 87-88. The same correspondence stated ICE did not consider Petitioner to be a flight risk, a danger to the community, or someone who had failed to establish his identity. *Id*.

Petitioner filed his Writ of Habeas Corpus November 27, 2019 seeking an individualized bond hearing. The Court adopted the "Magistrate Judge's Report and Recommendations" ("R&R") (Docket No. 13) which recommended this Court determine the following issues:

(1) Whether Petitioner's continued detention without a hearing violated his due process rights under the Fifth Amendment to the United States Constitution; and if so,
(2) Whether Petitioner should be released with appropriate conditions of supervision.

*See* Docket No. 24. The Court ordered the parties to submit supplementary briefs to address the alleged Fifth Amendment rights violations and whether a bond was necessary. *See* Minute Entry dated March 11, 2020.

Petitioner filed his "Application for a Temporary Restraining Order" ("Application for TRO") (Docket No. 37) seeking immediate release from the Port Isabel Detention Center ("PIDC") because of risks posed by the COVID-19 pandemic. Respondents responded in opposition by filing "Respondents' Response to Petitioner's Application for a Temporary Restraining Order" (Docket No. 41).

## II. LEGAL STANDARD

Federal courts have jurisdiction to review an alien's detention as long as the detention presents constitutional issues, such as questions of law about the Attorney General's statutory authority or the regulatory framework governing immigration detention. *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005); *Garza-Garcia v. Moore*, 539 F. Supp. 2d 899, 903 (S.D. Tex. 2007); *see also Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("Even after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.").

## III. DISCUSSION

Petitioner does not seek a redetermination of his parole request under Respondents' existing reading of the law. Docket No 11 at 1, 2-5. Rather, Petitioner challenges "the extent of Respondents' authority under the Fifth Amendment to continue his detention without providing an adversarial hearing before a neutral decision-maker to determine whether his detention is justified." *Id.* at 3.

Arriving aliens detained pre-removal under § 1225(b) have a due process right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable. *See Pierre v. Doll*, 350 F. Supp. 3d 227, 332 (M.D. Penn. 2018). To determine whether Petitioner's detention has become unreasonable, the Court should consider: (1) how long Petitioner has been in custody; (2) whether Petitioner is responsible for the delay in his removal proceedings; and (3) whether Petitioner has asserted defenses to removal. *L.N. v. Nielsen et al.*, 5:18-MC-00932 (S.D. Tex Mar. 29, 2019).

First, Petitioner has been detained for at least **32 months**. Docket No. 33 at 5. The length of Petitioner's confinement is the "most important factor that must be considered." *Alexis v. Sessions*, 2018 WL 5921017, at *8 (S.D. Tex. Nov. 13, 2018). Courts have generally considered 12-month detentions without bond hearings to be unreasonable. *See, e.g,, Maldonado v. Macias, et al.,* 150 F. Supp. 788, 809 (W.D. Tex. 2015) (detention of 23 months found unreasonable); *L.N.,* 5:18-MC-00932 (S.D. Tex. Mar. 29, 2019) (detention of 12 months with possibility of longer detention found unreasonable); *Alexis*, 2018 WL 5921017, at *8 (detention of 16 months resembled indefinite detention and favored relief). Without parole, Petitioner's detention is likely to last many more months as he awaits determinations from the BIA, and

potentially the Fifth Circuit.

Second, Petitioner has not been responsible for the delay in his case. On at least three occasions during the asylum proceedings, Respondents sought summary affirmance of the IJ's decision to have Petitioner removed. Docket No. 2 at 15. Then, when the case reached the Fifth Circuit, the parties jointly filed for remand to the BIA to correct the BIA's failure to analyze Petitioner's eligibility for relief and to allow the agency to address various aspects of Petitioner's asylum and withholding claims. *See* Docket No. 2 at 6-11.

Third, Petitioner has asserted defenses to his removal. At this stage, the Court may not inquire into the merits of Petitioner's application, but it is enough to note a possibility that Petitioner will not be removed, which diminishes the purpose of detaining Petitioner pending a final determination on whether he is removable. *See Lett v. Decker*, 346 F. Supp. 3d 379, 384 (S.D.N.Y. 2018).

Given these findings, the duration of Petitioner's detention has become unreasonable. Although Petitioner seeks an order granting him immediate release, the Court finds that "a bond hearing before an [IJ] is more appropriate… because an [IJ] is in a better position to conduct the sort of individualized review that is necessary to determine if Petitioner should be released during the pendency of [his] asylum case." *Maldonado*, 150 F. Supp. 3d at 812.

## IV. CONCLUSION

For these reasons, Petitioner's Writ of Habeas Corpus (Docket No. 1) is **GRANTED** as follows:

1. Within <u>14 days</u> of the date of this Order, Respondents must provide Petitioner with a bond hearing before an immigration judge to consider the appropriateness of his release during his immigration proceedings. At the hearing, DHS will bear the burden of showing that continued detention is necessary to accomplish the objectives identified by Respondents: Petitioner's appearance for subsequent proceedings.
2. If a hearing is not held within <u>14 days</u>, Respondents must release Petitioner from detention under reasonable supervision conditions.

The Court **ABATES** ruling on Petitioner's Application for TRO (Docket No. 37) given the pendency of the individualized bond hearing. The Court **ORDERS** the parties to file a status update with this Court within <u>30 days</u> of this Order.

Signed on this **21st** day of **April**, 2020.

_____
Rolando Olvera
United States District Judge
